UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

               Plaintiff,             Case No. 15-11247

                                      Paul D. Borman
v.                                  United States District Judge

BRIAN KRASICKY AND PNC BANK, N.A.,

               Defendants.
_____/

OPINION AND ORDER
GRANTING DEFENDANTS' MOTION TO DISMISS (ECF NO. 10)

On April 1, 2015, the United States of America filed the instant civil action against Defendants Brian Krasicky and PNC Bank, NA. (ECF No. 1.) The United States alleges that Defendant Krasicky distributed assets of Page Distribution, Inc. in violation of 31 U.S.C. § 3713(b) and that Defendant PNC Bank, as a successor in interest to National City Bank, inequitably received funds to which the United States was entitled to priority pursuant to § 3713(a).

Now before the Court is Defendants' Motion to Dismiss. (ECF No. 10.) The United States filed its response and Defendants thereafter filed their reply. (ECF Nos. 13 & 15.) A hearing on this matter was held on Thursday, January 7, 2016 at 2:00 PM.

For the following reasons, the Court finds Defendants' motion to dismiss should be GRANTED.

I. BACKGROUND

On or about April 5, 2007, National City Bank loaned $10 million dollars to Page Distribution, Inc. ("Page"). (Defs.' Mot. Ex. 1, at PG ID 60, Promissory Note.) Thereafter, in 2008,

the loan was increased to $12.5 million.  (*Id*. at PG ID 68, Modification of Promissory Note.)  These loans were secured by a Commercial Security Agreement dated July 18, 2001, in which National City Bank was granted a security interest in all existing or later acquired assets, including inventory.  (*Id*. at PG ID 97.)  National City Bank then filed a UCC-1 financing statement with the Ohio Secretary of State on February 22, 2001 reflecting this security interest.  (*Id*. at PG ID 103-105.)

Ultimately, Page defaulted on its obligations to National City Bank because it had insufficient assets to pay its liabilities.  (Compl. ¶ 7; *see* Defs.' Mot., Ex. 2, Order Granting Motion of the Appointment of a Receiver ("Order of Appointment"), PG ID 107.)  On March 9, 2009, the Court of Common Pleas of Lucas County, Ohio granted National City Bank's Motion for Appointment of Receiver ("Receiver Order") and appointed Defendant Brian Krasicky as the Receiver of the business operations and assets of Page.  (Order of Appointment at PG ID 107, Compl. ¶ 6.)  The Court of Common Pleas of Lucas County also held that "National City has perfected security interests in all of [Page's] personal property, business operations, including its accounts receivables, contracts, and other intangibles." (Defs.' Mot., Ex. 2, Order Granting Motion of the Appointment of a Receiver, PG ID, 107, at ¶ 1.)

Pursuant to the Children's Health Insurance Program Reauthorization Act of 2009, P.L. 111-3, § 701(h) (2009), a floor stocks tax ("FST") arose on tobacco products held by Page on April 1, 2009.  (Compl. ¶ 8; *see* P.L. 111-3, § 701(h)(3)(A) "A person holding tobacco products, cigarette papers, or cigarette tubes on April 1, 2009, to which any tax imposed by paragraph (1) applies shall be liable for such tax.").)  This tax was due on August 1, 2009.  (Compl. ¶ 9; P.L. 111-3, § 701(h)(3)(C) ("The tax imposed by paragraph (1) shall be paid on or before August 1, 2009.").)

Defendant Krasicky, as Receiver, was responsible for filing returns and paying taxes that arose from the operations of Page. (Compl. ¶ 10.)

On July 31, 2009, Defendant Krasicky sent an "unsigned and incomplete form entitled '2009 Floor Stocks Tax Return' to the Alcohol and Tobacco Tax and Trade Bureau." (Compl. ¶¶ 12-13; *see also* Defs.' Mot., Ex. 5, 7/31/2009 Letter and Form.) This form was accompanied by a document entitled "Page Distribution Federal Excise Tax Ending Inventory 3-31-09" and a letter signed by Defendant Krasicky which provided that Page owed a FST liability of $437,459.15. (Compl. ¶ 13; Ex. 5, 7/31/2009 Letter, Form.)

It is undisputed that Defendant Krasicky, as Receiver for Page, did not make any payment towards the FST liability and Plaintiff asserts that as of April 1, 2015, Page is indebted to the United States for the tax, including penalties and interest, in the amount of $763,501.63. (Compl. ¶ 15.) Plaintiff alleges that after April 1, 2009, and despite having notice of the FST liability, Defendant Krasicky distributed more than the amount owed for the FST to "creditors other than the United States, including PNC Bank." (*Id.* ¶¶ 11, 19-20.)

On April 1, 2015, the United States filed the current action against Defendants Krasicky and PNC Bank, as a successor in interest to National City Bank. (Compl. ¶ 5.) The United States alleges that Defendant Krasicky is personally liable for the FST and any penalties and interest pursuant to 31 U.S.C. § 3713(b) for "each distribution, to persons and entities other than the United States, of Page Distribution, Inc.'s assets, to which the United States was entitled to priority under 31 U.S.C. § 3713(a)." (Compl. ¶ 21.) The United States also claims that Defendant PNC Bank is liable "for restitution for each distribution that it or National City Bank received of Page Distribution, Inc.'s assets to which the United States was entitled to priority under 31 U.S.C. § 3713(a), under Ohio law,

3

or under the Receiver Order."  (*Id*. ¶ 21.)

## II. STANDARDS OF REVIEW

FED. R. CIV. P. 12(b)(6) allows for the dismissal of a case where the complaint fails to state a claim upon which relief can be granted.  When reviewing a motion to dismiss under Rule 12(b)(6), a court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *DirectTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007).  But the court "need not accept as true legal conclusions or unwarranted factual inferences." *Id*. (quoting *Gregory v. Shelby County*, 220 F.3d 433, 446 (6th Cir. 2000)).  "[L]egal conclusions masquerading as factual allegations will not suffice." *Eidson v. State of Term. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007).

The Supreme Court explained that "a plaintiff's obligation to provide the grounds of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  Factual allegations must be enough to raise a right to relief above the speculative level...." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted).  Dismissal is only appropriate if the plaintiff has failed to offer sufficient factual allegations that make the asserted claim plausible on its face. *Id.* at 570.  In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) the Supreme Court clarified the concept of "plausibility" stating:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." [*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556, 570 (2007)]. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid.* Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.*, at 557 (brackets omitted).

4

*Id.* at 678.  A plaintiff's factual allegations, while "assumed to be true, must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief." *LULAC v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (citing *Twombly*, 550 U.S. at 555-556) (emphasis in *LULAC*).  Thus, "[t]o state a valid claim, a complaint must contain either direct or inferential allegations respecting all the material elements to sustain recovery under some viable legal theory." *Bredesen*, 500 F.3d at 527 (citing *Twombly*, 550 U.S. at 562).

In addition to the United States' allegations in its complaint, the Court will consider the documents attached to Defendants' motion and referenced in the pleadings: the filings in the Lucas County Court of Common Pleas, including the Receiver's Reports; the agreements between National City Bank and Page; and Defendant Krasicky's signed cover letter dated July 31, 2009.  Although these documents are outside the pleadings, the Sixth Circuit has recognized that a lower court "may consider any matter of which a court may take judicial notice without converting a party's motion to dismiss into a motion for summary judgment." *Weiner v. Klais and Co., Inc.*, 108 F.3d 86, 88 (6th Cir. 1997).  Further, the "documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in a plaintiff's complaint and are central to her claim." *Id.* at 89.  In a motion to dismiss, a court may also rely upon matters of public record. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).  As the attached documents are referenced in the United States' complaint, central to its claims, and in the instance of the filings in Lucas County Court of Common Pleas, are matters of public record; these documents will be considered by the Court in evaluating the Defendants' Motion to Dismiss.

5

## III. ANALYSIS

A.      Defendant Krasicky

The Federal Priority Statute (also sometimes referred to as the Federal Insolvency Statute)

provides:

(a)(1) A claim of the United States Government shall be paid first when –

        (A)      a person indebted to the Government is insolvent and –

                (i)      the debtor without enough property to pay all debts makes a voluntary assignment of property;

                (ii)     property of the debtor, if absent is attached; or

                (iii)    an act of bankruptcy is committed;

        (B)      the estate of a deceased debtor, in the custody of the executor or administrator, is not enough to pay all debts of the debtor.

(2)     This subsection does not apply to a case under title 11.

(b)     A representative of a person or an estate (except a trustee acting under title 11) paying any part of a debt of the person or estate before paying a claim of the Government is liable to the extent of the payment for unpaid claims of the Government.

31 U.S.C. § 3713(a).

The United States argues that it has a claim for the FST imposed against the receivership

estate of Page.  It further contends that the Receivership Order was an "act of bankruptcy" under the

Federal Priority Statute, and that Defendant Krasicky violated the same when he paid other debts

before the United States' claim for the FST liability.  (Pl.'s Resp. at 3.)

The Federal Priority Statute "grants an unqualified priority of payment for all claims due to

the United States from an insolvent debtor."  *Straus v. United States*, 196 F.3d 862, 864 (7th Cir.

1999).  The text of the statute has remained "virtually unchanged since its enactment in 1797."

6

*United States v. Estate of Romani*, 523 U.S. 517, 524 (1998). However, the Supreme Court has concluded on several occasions that a specific policy set forth in a later federal statute should control over the Federal Priority Statute, despite the fact that the Federal Priority Statute was not expressly amended. *Romani*, 523 U.S. 517, 530-31 (1998) (finding that the specific provisions of the Tax Lien Act of 1966 controlled when the United States claimed a preference in the insolvent estate of a delinquent taxpayer); *United States v. Guaranty Trust Co. of N.Y.*, 280 U.S. 478, 485 (1930) (finding the Federal Priority Statute inapplicable to the insolvency of a railroad under the Transportation Act of 1920).

Here, Defendants rely upon the Supreme Court's decision in *Romani* to argue that Count I of the United States' claim against Defendant Krasicky fails as a matter of law because the Tax Lien Act of 1966, 26 U.S.C. § 6321, *et seq.* (the "Tax Lien Act") provides that Defendant PNC Bank's perfected security interest has priority over the United States' later tax lien.

The Tax Lien Act provides that:

> If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such a person.

26 U.S.C. § 6321. The Tax Lien Act further provides that: "[t]he lien imposed by section 6321 **shall not be valid** as against any purchaser, holder of a security interest,[1] mechanic's lienor, or judgment

---

[1] "Security Interest" is defined in 26 U.S.C. § 6323(h)(1) as "any interest in property acquired by contract for the purpose of security payment or performance of an obligation or indemnifying against loss or liability. A security interest exists at any time (A) if, at such time, the property is in existence and the interest has become protected under local law against subsequent judgment lien arising out of an unsecured obligation, and (B) to the extent that, at such time, the holder has parted with money or money's worth."

lien creditor until notice thereof which meets the requirements of subsection (f) has been filed by the Secretary."[2] 26 U.S.C. § 6323(a) (emphasis added).

Defendants argue that these provisions of the Tax Lien Act and the Federal Priority Statute result in a "plain inconsistency," because the Federal Priority Statute states that the United States shall be paid first when the debtor is insolvent, but the Tax Lien Act provides that a federal tax lien is not valid against an earlier "holder of a security interest" such as Defendant PNC Bank. Defendant contends that pursuant to § 6321, the United States' FST liability became a tax lien upon Defendant Krasicky's failure to pay, and because Defendant PNC Bank was a "holder of a security interest" (as recognized by the Ohio State Court in its order granting the motion for appointment of a receiver), the FST lien was not valid against it without the required filing pursuant to § 6323(a).[3] Defendants assert that the Supreme Court's decision of *United States v. Estate of Romani*, 523 U.S. 517 (1998), resolved this conflict and held that the Tax Lien Act controls.

In *Romani*, a court entered a judgment for $400,000 in favor of a third-party, Romani Industries, and against Francis J. Romani. 523 U.S. at 519. This judgment was recorded and therefore was, as a matter of state law, considered a "perfected" lien on Romani's real property. *Id*. Thereafter, the IRS filed multiple tax liens on the same property in the amount of $490,000. *Id*. at 520.

---

[2] Subsection (f) of this section provides that the notice shall be filed in the office within the State as designated by the laws of such State where in the property (real or personal) subject to the lien is situated, or with the clerk of the district court for the judicial district in which the property subject to the lien is situated if the State has not designated an office. 26 U.S.C. § 6322(f).

[3] There does not seem to be any dispute that the United States did not file the required filings pursuant to subsection (f).

8

When Romani died years later, his estate consisted of only $53,001. *Id.* Because Romani's property was "encumbered by both the judgment lien and the federal tax liens" the estate's administrator sought permission from the state court to transfer the property to the judgment creditor in lieu of execution. *Id.*

> The Federal Government acknowledged that its tax liens were not valid as against the earlier judgment lien; but giving new meaning to Franklin's aphorism that "in this world nothing can be said to be certain, except death and taxes," it opposed the transfer on the ground that the priority statute (§3713) gave it the right to "be paid first."

*Id.* (internal footnote omitted). The state courts then denied the Government's objection to the transfer and found an inconsistency between the Federal Priority Statute, that required that the United States be paid first over all competing claims, and the Tax Lien Act which stated that a federal tax lien is not valid against judgment lien creditors until certain notice is given. *Id.*

In *Romani*, the Supreme Court examined the history of both the Tax Lien Act and the Federal Priority Statute and clarified that "the proper inquiry is how best to harmonize the impact of the two statutes on the Government's power to collect delinquent taxes." *Id.* at 523-30. The Supreme Court reasoned that "the 1966 amendments to the Tax Lien Act bespeak a strong condemnation of secret liens, which unfairly defeat the expectations of innocent creditors and frustrate 'the needs of our citizens for certainty and convenience in the legal rules governing their commercial dealings.'" *Id.* at 534 (citation omitted). The Supreme Court ultimately held that the Tax Lien Act should control and the prior judgment lien had priority over the United States' federal tax liens. *Id.*

The *Romani* decision resulted in an IRS "policy not to assert its priority under section § 3713(a) over a prior perfected interest that otherwise has priority under section 6323 of the Internal Revenue Code." *IRS Chief Counsel Advice*, 200210063, 2002 WL 368437 (March 8, 2002)

(attached as Defs.' Ex. 7).  Indeed, the IRS Manual provides that "The Federal Priority Statute does

not apply if, before the insolvency proceeding begins, another person has obtained an interest in the

property that would prevail over the federal tax lien under IRC 6323."  IRM, 5.17.13.3, at (1) (07-

09-2012) (attached as Pl.'s Ex. 1).  The IRS Manual goes on to clarify that:

> (b)   Under IRC 6323(a), the following creditors prevail unless the IRS has filed
>        a Notice of Federal Tax Lien: (a) purchasers, (b) holders of security interests,
>        (c) mechanic's lienors, and (d) judgment lien creditors.  Generally, creditors
>        meeting the requirements in IRC 6323(a), (b), (c), or (d), will have a higher
>        priority claim than the IRS if the creditor's interest arises prior to the
>        insolvency proceeding and prior to the filing of the Notice of Federal Tax
>        Lien.
>
> ...
>
> (d)   The general rule is that if the creditor would prevail against the IRS under
>        IRC 6323 outside of an insolvency, it will also prevail against the IRS in the
>        insolvency.

*Id*. at (1)(b), (d).

The United States attempts to distinguish *Romani* by arguing that the FST liability is not a

"tax lien" for purposes of § 6323(a), but rather must be considered an "administrative expense" that

arose during the receivership.  Therefore, the United States contends that the FST liability does not

fit into one of the narrow provisions (*i.e.*, purchaser, holder of security, mechanic's lienor, or

judgment creditor) of the Tax Lien Act.  The United States then argues that there is a difference

between pre-receivership and post-receivership priority.

In *Romani*, it was agreed by the parties that by the terms of § 6323(a) the federal liens "were

not valid against the lien created by the earlier recording of Romani Industries' judgment."  *Id.* at

524.  In the instant action, the United States does not concede that its FST liability is invalid against

the earlier perfected security interest of Defendant PNC Bank - rather, the United States argues that

10

the Tax Lien Act does not apply because the FST liability is an "administrative expense" versus a "tax lien."

At its base, the United States' argument rests upon finding the timing of the tax accrual dispositive. The United States claims that because the FST accrued after the receivership order was entered, it must be classified as an "administrative expense," and pursuant to Ohio case law (all predating 1966) secured creditors are not protected from such an expense. The United States argues that the Tax Lien Act recognizes such a scheme in its definition of "security interest" which provides that a security interest exists "if, at such time, the property is in existence and the interest has become protected under local law..." 26 U.S.C. § 6323(h)(1). The United States contends that this indicates that the validity of the security interest is relative to whether it would be protected under local law from a similarly situated creditor. (ECF No. 13, Pl.'s Br. at 6-7.)

First, it appears from the clear terms of the Tax Lien Act that Defendant PNC Bank had a security interest in Page's assets. Its interest was recorded in 2001 and later recognized as "perfected" by an Ohio Court. The United States argues that a secured interest only exists to the extent that it is generally protected by local law, and here, local law would allow the payment of administrative expenses, and therefore, Defendant PNC Bank does not have a security interest against administrative expenses. This argument ignores the rest of the pertinent statutory definition that provides a "security interest" exists if "the interest has become protected under local law against a subsequent judgment lien arising out of an unsecured obligation." 26 U.S.C. § 6323(h)(1) (emphasis added). The statutory definition of "security interest" does not indicate that a security interest is dependent upon the relative position of the creditor. Rather, the definition states, clearly, that a security interest exists where the interest is protected under local law "against a subsequent

11

judgment lien."  Here, it is not disputed that Defendant PNC Bank's interest was protected against a later arising judgment lien arising out of an unsecured obligation.  Accordingly, the United States' reliance on this statutory definition does not further its case.[4]

The United States relies upon *Southern Railroad Co. v. United States*, 306 F.2d 119 (5th Cir. 1962) for the proposition that taxes should be construed as administrative expenses if the tax accrues after receivership.  In *Southern Railroad*, the Fifth Circuit addressed the issues of tax priority and administrative costs in the context of a railroad that was subject to an equity receivership for decades.  The lower court "allowed the tax claims of the United States and various State political entities to share pro rata the whole of this balance [for distribution] as partial, but preferential, payment of their allowed claims."  *Id*. at 122.  The holder of all bonds and "disappointed business creditor" Southern Railway Company appealed and argued that "the mortgage lien is superior to tax claims as there can be no question of equitable priority or apportionment" and failing that status sought to have the Fifth Circuit evaluate the "relative priority" between its claims and the tax claims. *Id*. at 123.  Critically, in *Southern Railroad*, the Fifth Circuit recognized that "the tax claims are not *asserted in the usual terms of a lien having an absolute statutory priority*.  Thus, the Federal Government candidly acknowledges that it does not in any way rely on" the Federal Priority Statute and that is a "forthright recognition of at least this fact of life that this statutory priority gives way

---

[4] The Court notes that while the United States argues that state law should be controlling regarding whether a the FST is considered an administrative expense versus a tax lien, the United States dismisses the Receivership Order entered by the Ohio state court in this action which gave the receiver *discretion* regarding the payment of taxes accruing after the receivership was created on the basis that federal law controls priority (*see* Pl.'s Br. at 9).  Here, the Tax Lien Act defines a tax lien and the statute does not on its face make exceptions for state law administrative expenses or reference the timing of the accrual of the tax lien in reference to its validity against prior secured interests.

to a valid recorded first mortgage." *Id*. (emphasis added) (citing 31 U.S.C.A. § 191 and 31 U.S.C. § 3466, earlier versions of 31 U.S.C. § 3713.)  In the present action, however, the United States claims priority for its one-time tax pursuant to the Federal Priority Statute, in the face of a perfected security interest as defined by the Tax Lien Act.   Additionally, the parties themselves agreed that the payroll taxes at issue "should be classified as operating expenses of the Railroad," while in the present action, there is no agreement between the parties that the one time FST should constitute an administrative expense.

The United States also argues that the inconsistency in *Romani* only arises when a tax lien arises before a receivership.  However, the Court finds that the pertinent issue in this case is not the timing of the liability but whether it falls within the ambit of the federal Tax Lien Act, *i.e.* whether the FST liability is a "tax lien."  As defined by the Tax Lien Act, it appears that the FST liability became a tax lien automatically when the tax was assessed and not paid after demand.  *See United States v. Galletti*, 541 U.S. 114, 118, 122 (2004) (discussing and explaining the "assessment" of taxes under the federal system, summarizing an assessment occurs "where the Secretary rejects the self-assessment of the taxpayer or discovers that the taxpayer has failed to file a return, the Secretary calculates the proper amount of liability and records it in the Government's books.").  The United States admitted during oral argument that a lien was "incidentally created" through the United States' demand for payment of the FST.

While true that this case does not implicate the concerns of "secret liens" that the Supreme Court warned of in *Romani*, it appears that upon its plain terms, the Tax Lien Act controls where the FST was a "tax lien" pursuant to § 6321.  Further, while the United States cites the IRS Manual to support its paradigm of post-receivership taxes being distinguishable from pre-receivership taxes,

the IRS Manual does not actually support such an interpretation and in fact states in no uncertain terms: "The general rule is that if the creditor would prevail against the IRS under IRC 6323 outside of an insolvency, it will also prevail against the IRS in the insolvency." IRM 5.17.13.3 (1)(d). In the present case, outside of an insolvency, the Defendants' perfected interest would prevail against the FST tax lien.

The United States relies upon *Southern Railroad Co. v. United States*, 306 F.2d 119 (5th Cir. 1962), for the proposition that taxes should be construed as administrative expenses if the tax accrues after receivership. The Court finds *Southern Railroad* is distinguishable. In *Southern Railroad*, the Fifth Circuit addressed the issues of tax priority and administrative costs in the context of a railroad that was subject to an equity receivership for decades. The lower court "allowed the tax claims of the United States and various State political entities to share pro rata the whole of this balance [for distribution] as partial, but preferential, payment of their allowed claims." *Id*. at 122. The holder of all bonds and "disappointed business creditor" Southern Railway Company appealed and argued that "the mortgage lien is superior to tax claims as there can be no question of equitable priority or apportionment" and failing that status sought to have the Fifth Circuit evaluate the "relative priority" between its claims and the tax claims. *Id*. at 123. Critically, in *Southern Railroad*, the Fifth Circuit recognized that "the tax claims are not *asserted in the usual terms of a lien having an absolute statutory priority*. Thus, the Federal Government candidly acknowledges that it does not in any way rely on" the Federal Priority Statute and that is a "forthright recognition of at least this fact of life that this statutory priority gives way to a valid recorded first mortgage." *Id*. (emphasis added) (citing 31 U.S.C.A. § 191 and 31 U.S.C. § 3466, earlier versions of 31 U.S.C. § 3713.) In the present action, however, the United States claims priority for its one-time tax

14

pursuant to the Federal Priority Statute, in the face of a perfected security interest as defined by the Tax Lien Act. Additionally, the parties themselves agreed in *Southern Railroad* that the payroll taxes at issue "should be classified as operating expenses of the Railroad," while in the present action, there is no agreement between the parties that the one time FST should constitute an administrative expense. *Southern Railroad*, 306 F.2d at 127-28.

Further, to the extent that the United States relies upon *Law Offices of Jonathan A. Stein v. Cadle Co.*, 250 F.3d 716 (9th Cir. 2001) and *Straus v. United States*, 196 F.3d 862 (7th Cir. 1999), such reliance is misplaced because both cases are consistent with Defendants' argument and do not speak to administrative expenses or the relevance of a when a tax lien accrues.

In *Cadle*, a taxpayer incurred a tax liability to the United States and the government attempted to levy his compensation. *Cadle*, 250 F.3d at 718. The employer refused to honor the levy and continued to pay the taxpayer. *Id*. The government then sued to enforce the levy on that taxpayer's wages and obtained a judgment pursuant to 26 U.S.C. § 6332(d). However, prior to the United States filing a notice of lien and judgment as required by state law, a different party had successfully sued the employer on an unrelated matter and filed his judgment with the Secretary of State. *Id*. Both of the parties claimed priority; the judgment creditor under the Tax Lien Act and the government under the Federal Priority Statute. The Ninth Circuit held that the government did not have a tax lien as described in § 6321 against the employer and therefore, the Tax Lien Act was not applicable and the Federal Priority Statute controlled. Specifically, the Ninth Circuit explained:

> The IRS is given authority to assess taxes, and must do that in a particular manner. *See* 26 U.S.C. §§§6201-6204. Thereafter, it must give notice to the taxpayer and demand payment. *See id*. §6303. If the tax is not paid, the lien provided for in 26 U.S.C. § 6321 springs into being. Under § 6323, notice of that "secret lien" against the taxpayer's assets must be given.

15

*Id*. at 719. The Ninth Circuit then distinguished the liability at issue, "failure to surrender property subject to a levy" verus the creation of a tax lien, noting that "Quicksilver did not fail to pay a tax; it failed to honor a levy. It did not become liable for a tax; it became liable for the value of the property it failed to turn over." *Id*. at 720.

In the present action, although the United States expends much effort in casting its FST liability as an "administrative expense" it appears on its face that the FST is a tax that arose against Page, that was owed, demanded, and not paid. At that time, under the terms of the Tax Lien Act, the FST became a "tax lien." Therefore, unlike *Cadle*, which involved a judgment to enforce a levy, the present action involves the *failure to pay a tax after demand*. For this reason, the United States' reliance on *Cadle* is unpersuasive.

In *Straus*, a furniture retailer entered into an assignment for the benefit of creditors with Anita Straus, who then liquidated the assets of the corporation. *Straus*, 196 F.3d at 863. Prior to the assignment the retailer had been liable to both the United States and Illinois for unpaid taxes. *Id*. The United States and Illinois both claimed priority over the net proceeds of the liquidation of the retailer. *Id*. All but one of Illinois' assessments predated the United States assessments, and based on this fact, Illinois argued that it had priority over the United States claims. *Id*. at 864. The Seventh Circuit examined the recent Supreme Court decision in *Romani*, but rejected Illinois' argument that *Romani* should be interpreted broadly based on policy concerns "to protect choate liens from later-arising federal tax liens" based on "the policies of protecting commercial expectations and the uniform treatment of solvent and insolvent taxpayers alike." *Id*. The Seventh Circuit concluded that while the Supreme Court did justify its decision in *Romani* with reference to policy concerns, "it ultimately relied on the long-standing proposition noted above that the general

16

federal priority rule should give way to a specific, inconsistent provision in a later federal statute." *Id*. at 865-66 (citation omitted). The Seventh Circuit found that Illinois had failed to show "its tax liens fall within the specifically enumerated categories in the Tax Lien Act" or any other later statutory provision that was inconsistent with the Federal Priority Statute. *Id*. at 866.

The United States' reliance on *Straus* is misplaced. In *Straus*, Illinois based its arguments solely upon the policy concerns regarding the protection of commercial expectations regarding choate liens against solvent and insolvent taxpayers. More to the point, the Seventh Circuit found for the federal government because Illinois' tax liens did not fall within one of the enumerated categories in the Tax Lien Act. Here, while it is true that the policy concern in *Romani* regarding secret liens is not present, it is undisputed that Defendant PNC was a holder of a perfected security interest and therefore falls within one enumerated categories of § 6323(a).

In summary, the United States' reliance on the *Straus* and *Cadle* decisions are unpersuasive. Further, while the United States attempts to categorize the federal tax that accrued during the receivership as an administrative expense pursuant to state law, the FST became a "tax lien" pursuant to the clear terms of the Tax Lien Act when the government made its demand for payment that went unheeded. The Tax Lien Act controls over Ohio's treatment of post-receivership taxes. In such a situation, the Court finds that pursuant to *Romani* the United States' FST tax lien is not valid against Defendant PNC's earlier recorded security interest.

Accordingly, the Court finds that under the clear terms of the Tax Lien Act and *Romani*, the United States' claim against Defendant Krasicky fails as a matter of law.

B.      Defendant PNC Bank

The Court notes that there is no dispute that the claim against Defendant PNC Bank is a derivative claim that rises and falls upon the liability of Defendant Krasicky.  Accordingly, where the Court has found that the claim against Defendant Krasicky fails as a matter of law, the claim against Defendant PNC Bank also fails.

## IV. CONCLUSION

For all these reasons, the Court GRANTS Defendant's Motion to Dismiss (ECF No. 10).

IT IS SO ORDERED.


s/Paul D. Borman_____
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated:  March 30, 2016


## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on March 30, 2016.


s/Deborah Tofil_____
Case Manager

18